**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

In re:                                                    In Proceedings
                                                          Under Chapter 7
DAVID A. SCOTT and
DOROTHY M. SCOTT                                          No. 07-41638

                    Debtors.

## OPINION

In this chapter 7 case, the debtors claim an exemption in a $4,800.00 fee that they paid to a debt settlement agency prior to filing bankruptcy. The trustee objects to the exemption on the grounds that she intends to file a fraudulent conveyance action to recover the fee, and that under 11 U.S.C. § 522(g), debtors are not entitled to exempt any amount she may recover since debtors' payment to the debt settlement agency was voluntary.[1]

The relevant facts are undisputed. The debtors had previously employed Nationwide Financial Services, U.S.A., Inc. ("NFS"), a company offering debt settlement services, to negotiate and compromise their debts. Over the course of one year, the debtors paid NFS a total of $5,300.00. Eventually, the debtors terminated their relationship with NFS. While the debtors received a refund of $500.00, they were unable to secure a refund of the remaining $4800.00. The debtors claim the $4,800.00 paid to NFS as exempt property.

---

[1] Section 522(g) provides:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551 or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if---
>
> > (1)(A) such transfer was not a voluntary transfer of such property by the debtor….

11 U.S.C. § 522(g).

When a debtor files bankruptcy, the Bankruptcy Code allows the debtor to choose between state or federal exemptions "unless a state chooses to 'opt out' of the federal exemption scheme."   *In re Chapman*, 223 B.R. 137, 139 (Bankr.N.D.Ill. 1998) (citing 11 U.S.C. §522(b)(1)).   Illinois opted out of the federal exemption scheme by enacting 735 ILCS 5/12-1201, which states that "[i]n accordance with the provisions of Section 522(b) of the Bankruptcy Code…residents of this State shall be prohibited from using the federal exemptions provided in Section 522(d) of the Bankruptcy Code…except as may otherwise be permitted under the laws of Illinois."   Accordingly, Illinois residents who file for bankruptcy must look to Illinois law to determine property exemptions.

Debtors claim an exemption in the $4,800.00 under 735 ILCS 5/12-1001(b), commonly known as the "wild card" exemption.   That statute allows debtors to exempt their "equity interest, not to exceed $4,000 in value, in *any other property*…." 735 ILCS 5/12-1001(b) (emphasis added).

The debtors argue that the money which they paid to NFS for its services is "money being held in the hands of another" and money in which they have an interest.   The debtors cite *In re Johnson*, 57 B.R. 635 (Bankr.N.D.Ill. 1986) and *In re Schweke*, 164 B.R. 751 (Bankr.N.D.Ill. 1994) to support their argument.   These cases, however, are distinguishable from the instant case.   In both *Johnson* and *Schweke*, the debtors were allowed to claim exemptions in garnished wages.   By virtue of the garnishment, the wages were subject to a lien and were involuntarily withheld from the debtors.   Importantly, the wages were still being held by a third party and, in neither case, had been paid to creditors.   In the instant case, the funds were voluntarily paid to NFS for debt settlement services.   The debtors have presented no evidence that the funds are still being held in trust by a third party, nor have debtors presented evidence of

a fiduciary relationship between the debtors and NFS which would require a trust account to hold the debtors' money.  In fact, the evidence in this case supports a contrary finding.

According to the contract signed by the debtors and NFS,[2] debtors agreed to pay NFS a retainer fee of $4800.00 for "credit counseling, creditor correction, and settlement negotiations with creditors."[3]  Contract, paragraph 1. The contract specifically states that this is a "retainer fee" and that "this fee is not refundable." *Id*.  In addition, paragraph 7 of the contract states that "[b]eyond NFS's fees, all *additional* money paid by client to NFS will be deposited into an Attorney's Trust Account" and "[a]s settlements are reached, attorney will issue funds from this Trust Account, to NFS, in order to settle on client's debts." Contract, paragraph 7 (emphasis added).   Thus, as explicitly stated in the contract, only the money paid in excess of the $4800.00 in fees would be deposited in a trust account.  As previously stated, the debtors made an additional payment of $500.00 to NFS, and that money was recovered.  The $4800.00 was not, as debtors argue, money held in trust for them.

At the hearing on the trustee's objection to exemption, the debtors appeared to argue, in the alternative, that they are entitled to claim an exemption in a cause of action against NFS for recovery of the funds.   In her brief, the Trustee "acknowledges that the Debtor[s] may have a cause of action against Wells [the attorney who signed the contract on behalf of NFS] for breach of contract." Brief in Support of Trustee's Objection at p. 2.   However, she argues that it is the trustee, not debtors, who should determine which cause of action to pursue and which cause of action would most likely result in a recovery for the estate. The trustee states:

> In this case, it is in the best interest of the creditors for the Trustee to bring the cause of action under a fraudulent conveyance [theory] because the Debtors would not be entitled

---

[2]  Attorney William Wells signed the contract for NFS.

[3]  The fee charged by NFS for negotiating settlements with creditors is .075 times the total amount of debt (here, $48,000.00), plus $1200.00.

to an exemption and the proceeds would be paid to the creditors.  Paying the Debtors' creditors was the original goal of the Debtors when [they] contracted with Wells to negotiate debt settlements with creditors.  Allowing the Trustee the cause of action would be consistent with the Debtors' goal of paying his creditors and [is] in the best interest of the Debtors' unsecured creditors.

*Id*.

The Court agrees that once debtors filed bankruptcy, any cause of action against NFS became part of the bankruptcy estate.  It is an axiom of bankruptcy law that a pre-petition cause of action does not belong to the debtor.  Rather,

[i]n a chapter 7 bankruptcy case, any unliquidated lawsuits initiated by a debtor prepetition (or that could have been initiated by the debtor prepetition) become part of the bankruptcy estate subject to the sole direction and control of the trustee, unless exempted or abandoned or otherwise revested in the debtor.  The debtor lacks standing in a chapter 7 case to prosecute claims that are property of the estate.

*In re Bailey*, 306 B.R. 391, 392-93 (Bankr.D.Dist.Col. 2004) (citations omitted).

However, the trustee has not, as of this date, filed *any* cause of action against NFS. The Court questions whether the trustee could succeed in a fraudulent conveyance action under the facts of this case, and is curious why the trustee would not pursue, at least in the alternative, an action for breach of contract.   In any event, whether or not the debtors may claim an exemption in the proceeds of any recovery depends, as the Trustee states, on which cause of action is successful.

For the reasons stated, the Court reserves ruling on the Trustee's objection to the debtors' claimed exemption in the funds paid to NFS pending the outcome of the Trustee's prosecution of the bankruptcy estate's cause of action.

ENTERED: June 2, 2008                          /s/ Kenneth J. Meyers
                                               _____
                                               UNITED STATES BANKRUPTCY JUDGE